39 So.2d 241

KIMBROUGH et al. v. DICKINSON et al.

1 Div. 309.

Supreme Court of Alabama.

Feb. 24, 1949.

678

Roy W. Kimbrough, of Thomasville, John A. Dickinson, of Prattville, and Hill, Hill & Whiting and Richard T. Rives, all of Montgomery, for appellants.

Paul S. Jones and Adams & Gillmore, all of Grove Hill, for appellees.

LIVINGSTON, Justice.

Shelton C. Dickinson departed this life December 21, 1943, leaving a last will and testament dated June 20, 1939, which was duly probated in Clarke County, Alabama.

Item three of the will is as follows:

"All of the rest of my property, real, personal and mixed, of which I die seized and possessed or to which I may be entitled at my decease I give and bequeath to my nearest living kin—my beloved brother and sister, Robert L. Dickinson and Maude Dickinson. These two to share alike in all property."

The will named Robert L. Dickinson and Maude Dickinson as executor and execu-trix thereof. Robert L. Dickinson died prior to the death of the testator, leaving five children surviving. Maude Dickinson was appointed sole executrix of the will of Shelton C. Dickinson. Thereafter, in October 1944, the administration of the estate of Shelton C. Dickinson, deceased, was duly and legally removed to the Circuit Court of Clarke County, in Equity. The testator left surviving certain other heirs at law.

His estate was valued at approximately $250,000.00. In the main, it was undisposed of, other than by said item three. Controversies arose among the heirs at law as to the proper construction or interpretation of said item three. Maude Dickinson, on the one hand, insisted that the proper interpretation, and the one intended by the testator, was that item three constituted a gift to a class composed of persons whom the testator regarded and identified as his "nearest living kin," and that she and Robert L. Dickinson constituted that class: that Robert having died prior to the death of the testator she was the sole surviving member of that class at the time of testator's death, and, as such, took the entire residuary estate. On the other hand, some of the next of kin took the position that item three was a gift to Robert L. Dickinson and Maude Dickinson as individuals, and that the gift to the brother lapsed by reason of his death, and therefore descended as intestate property.

Under these circumstances, Maude Dickinson, as executrix of the will of Shelton C. Dickinson, deceased, instituted suit in the Circuit Court, in Equity of Clarke County, seeking a construction or interpretation of the will on account of an alleged ambiguity in item three. In this suit she also joined individually and as a legatee under the will. In this phase of the bill she sought a decree to the effect that item three constituted a gift to a class; that she was the sole surviving member of that class and, as such, took the entire residuary estate. The other heirs at law of Shelton C. Dickinson, deceased, forty-nine in number, were made parties respondent to the bill of complaint. Some of the respondents were minors and some were in the Armed Forces of the United States in time of war.

The court appointed Hon. Roy W. Kimbrough, a practicing attorney of Clarke

County, Alabama, as guardian ad litem for respondents Clayton Foscue, Jr., Sidney Pugh, Jr., and William C. Dickinson, minors, and as attorney ad litem for Clayton Foscue, Jr., and Clayton Dunn, who were in the Armed Forces of the United States at the time the bill was filed. In addition to these minors and soldiers, Mr. Kimbrough represented, by private employment, six other respondents.

The court by appointment named Hon. John A. Dickinson, a practicing attorney of Autauga County, Alabama, as attorney ad litem for William C. Dickinson, James S. Dickinson and Edward E. Dickinson, respondents who were also in the Armed Forces of the United States when the bill was filed. And in addition, Mr. Dickinson, by private employment, represented three other respondents.

Representing the parties respondent, as above stated, Mr. Kimbrough and Mr. Dickinson interposed demurrers to the bill of complaint. Twenty-one respondents suffered decree pro confesso to be entered against them, and the remaining respondents filed answers favorable to the contention of Maude Dickinson. The demurrer took the point that item three of the will of Shelton C. Dickinson, deceased, was not ambiguous, and that there was no room for construction or interpretation. The trial court overruled the demurrers to the bill, and respondents, represented by counsel as aforesaid, appealed to this Court. Pending the appeal to this Court, four of the appellants employed the law firm of Hill, Hill, Whiting and Rives of Montgomery, Alabama, to represent them on the appeal.

This Court, 24 So.2d 424, reversed and remanded the cause to the Circuit Court, in Equity, of Clarke County for further consideration, and held, in effect, that item three of the will did not show such an ambiguity as requires interpretation, was not a gift to a class, and that the devise to Robert L. Dickinson lapsed upon his death before that of the testator, and as to which Shelton C. Dickinson died intestate, and that it must be distributed according to the statutes of descent and distribution.

After the cause was remanded to the lower court, that court, on June 12, 1946, entered a decree sustaining the demurrers to the bill of complaint, dismissed it, and taxed complainants with the costs of court.

On July 9, 1946, Roy W. Kimbrough, individually and as solicitor for the respondents, represented by him, and John A. Dickinson, individually, and as solicitor for the respondents represented by him, and the law firm of Hill, Hill, Whiting and Rives, individually and as solicitors for the respondents represented by them, filed in said cause their application or petition for a rehearing and modification of the decree of June 12, 1946. Petitioners prayed that the execution or operation of the decree of June 12, 1946 be suspended, and that their application be set down for a hearing, and the cause restored to the docket in order that justice and equity be done in the premises: that pending such hearing, the decree be amended and modified so as to strike therefrom its provision for taxation of costs in said cause. Further, the petitioners in substance prayed that upon a hearing of the petition the court would make and enter a decree to the effect that a common fund had been realized or preserved for a class consisting of all the respondents, by having nine-twentieths of the residuary estate of Shelton C. Dickinson, deceased, vest in them through the efforts and services of petitioners; that the court ascertain and fix a reasonable and proper solicitors' fee for each of the solicitors herein, that is to say, Roy W. Kimbrough, John A. Dickinson and Hill, Hill, Whiting and Rives, and that said fees be taxed against that part of the trust estate realized or preserved, or, if mistaken in their prayer, to have said fees taxed against that part of the trust estate realized or preserved, that the court fix a reasonable attorneys' fee for said representation and declare and establish a lien on the respective interests of the respondents represented by them, and for general relief.

On July 17, 1946, the court entered a decree, in effect, striking from the decree of June, 1946, the provision taxing costs of court, restoring the cause to the docket and setting the petition down for a hearing on September 9, 1946. On September 12, 1947, the court entered a decree, in effect, allowing guardian ad litem and attorney ad litem fees to be paid out of the entire residuary

estate, and taxed as costs of court, and denied petitioners' prayer that they be allowed a reasonable solicitors' fee out of the nine-twentieths' part of the residuary estate realized or preserved, and denied petitioners' prayer for the court to fix a lien on the interests of the parties represented by them. The court in its decree· retained jurisdiction of the cause for the purpose of final settlement of the estate. From the decree of September 12, 1947, this appeal is prosecuted. On submission here, appellants prayed for the alternate writ of mandamus in the event an appeal was not the proper method of review.

Section 754, Title 7, Code of 1940, provides:

"From any final judgment or decree of the circuit court, or courts of like jurisdiction, or probate court, except in such cases as are otherwise directed by law, an appeal lies to the supreme court, for the examination thereof as matter of right, on the application of either party, or his personal representative; and the clerk, register, or judge of probate, must certify the fact that such appeal was taken, and the time when, as part of the record, which gives the Supreme Court jurisdiction of the case."

■ In Ex parte Elyton Land Co., 104 Ala. 88, 15 So. 939, 940, Chief Justice Brickell said:

"The test of the finality of a decree to support an appeal is not whether the cause remains in fieri, in some respects, in the court of chancery, awaiting further proceedings necessary to entitle the parties to the full measure of the rights it has been declared they have, but whether the decree which has been rendered ascertains and declares these rights. If these are ascertained and adjudged, the decree is final, and will support an appeal."

In De Graffenried v. Breitling, 192 Ala. 254, 68 So. 265, 267, this Court quoted the foregoing from the Elyton Land Company case, and following quotations from Alexander v. Bates, 127 Ala. 328, 28 So. 415, 419; Stein v. McGrath, 128 Ala. 175, 30 So. 792, and Herstein v. Walker, 90 Ala. 477, 7 So. 821, said:

"The rule is best stated in Adams v. Sayre, 76 Ala. 509, as: 'No general rule can probably be stated, which would define accurately, for all possible emergencies, what constitutes the equities of every case. These equities embrace the substantial merits of the controversy—the material issues of fact and law litigated or necessarily involved in the cause, which determined the legal rights of the parties, and the principles by which such rights are to be worked out.'

"This definition of a final decree is but the application of common sense and common justice between the parties at interest in the subject-matter. Gainer et al. v. Jones, 176 Ala. 408, 58 So. 288; Dickens v. Dickens, 174 Ala. 345, 56 So. 809; Wynn, Adm'r v. [Tallapoosa County] Bank, 168 Ala. 469, 53 So. 228."

■ In the case at bar, the decree of September 12, 1947, effectively denied petitioners' right to have ascertained a reasonable attorneys' fee to be paid attorneys for their services, and to have the same taxed as a part of the costs in the case. The petition presented inquiries of a distinct and independent character, and received a final decision. The fact that jurisdiction was retained for the purpose of a final settlement of the estate does not, in our opinion, prevent the substantial finality of the decree for the purposes of an appeal.

The principal question presented on this appeal is whether the thirty-three respondents, who made no effort to protect their interests, should share, proportionately, in the expenses incurred in the litigation by the sixteen respondents who did.

In the case of Keith & Wilkinson v. Forsythe, 227 Ala. 555, 151 So. 60, 61, it was said:

"We think that the administration of an estate in any court having jurisdiction is the administration of a trust as there described. We do not think that the trust estate there mentioned is that character of trust which the chancery court alone will administer. An administrator or executor is a trustee, and his administration of the estate of a decedent is that of a trust, it matters not in what court jurisdiction is proceeding. Randolph v. Vails, 180 Ala.

82, 60 So. 159; James v. James, 55 Ala. 525; Evans v. Evans, 200 Ala. 329, 76 So. 95; Nunn v. Nunn, 66 Ala. 35; 24 C.J. 48; Young v. Wall, 215 Ala. 131, 110 So. 135."

Some insistence is made in appellants' briefs that Maude Dickinson denied the existence of the trust or that she tried to destroy it; that she claimed all of the trust property adversely to the trust. But we think the record discloses the contrary. True, she claimed all of the trust property, but her claim was derivative with respect to the trust. However, the point is not decisive of the case.

Here, we are primarily concerned with the construction of section 63, Title 46, Code of 1940, which provides:

"In all suits and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint, or common property, or any party in the suit or proceeding, and is authorized to tax as a part of the costs in such suit or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind."

In Bidwell v. Johnson et al., 191 Ala. 195, 67 So. 985, 987, it was said:

" 'To construe a statute according to its equity is nothing more than to give effect to it, according to the intention of the lawmakers, as indicated by its terms and purposes; hence it may either be extended or restrained by an equitable construction.' Lane v. Kolb, 92 Ala. 636, 9 So. 873.

"Such an equitable construction was given to the statute in the case of Wilks v. Wilks, supra [176 Ala. 151, 57 So. 776], wherein it was indicated that for such a fee to be taxed under this statute out of

the common fund it must have been for services rendered for a matter in which the trust as a trust is interested, or for the common benefit of all. Indeed, we take it that this is the construction so fixed by the Legislature in adopting the Code, as shown in section 5219, Code of 1907, wherein these words are found, 'When the services are for a common benefit of all.' See, also, Northen v. Tatum, 164 Ala. 368, 51 So. 17. This construction rests upon the principle akin to that recognized in such cases as Strong v. Taylor, 82 Ala. 213, 2 So. 760; Grimball v. Cruse, 70 Ala. 534; Trustees v. Greenough, 105 U.S. 527, 26 L. Ed. 1157; Central Railroad & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L. Ed. 915—wherein the principle is stated that where there is a common trust or fund and suit is instituted by one for the benefit of all, it is not just that one alone should bear the burden when others receive the benefit."

The solicitors' fees that may be allowed on final hearing for services that inured to the benefit of the trust fund or common estate, and not to that of the individuals, De Ramus v. De Ramus, 205 Ala. 219, 87 So. 354; Butler v. Fuller, 204 Ala. 272, 85 So. 539, are not necessarily limited to the solicitors for the complainants. In a proper case the statute may be extended to other counsel. Section 63, Title 46, Code of 1940; Bidwell v. Johnson, 191 Ala. 195, 67 So. 985; Dent v. Foy, 214 Ala. 243, 107 So. 210; Brake v. Graham, 214 Ala. 10, 106 So. 188.

In the case of Morton v. New Orleans & Selma Ry., 79 Ala. 590, at pages 623-624, this Court declared:

"We come next to consider the claim of counsel fees, which we are urged to allow in the present suit. It is our opinion, that the present case is not one in which such a claim can be charged against the general fund which may be realized from the sale of the mortgaged property. The fundamental principle on which such allowances are justified is, that a trust estate should bear the expenses of its administration in a court of equity. Where a trustee, acting with fairness and impartiality, resorts to necessary litigation in order to rescue a trust estate from waste or destruction, and

succeeds by his efforts in doing so, he is entitled to reimbursement out of the fund itself, for reasonable expenses incurred in prosecuting such suits, including a proper sum for attorney's fees. A like rule is applicable, where a creditor institutes a suit in equity, not exclusively for his own benefit, but for the joint benefit of himself and other creditors of the same class to which he belongs. It will be observed that the cocomplainants, in suits of this nature, all have a similar interest in the subject matter of litigation—a common, and not an antagonistic interest in the trust fund, which has been brought under the control of the court. The necessary expenses of the original complainant incurred in litigation may very well, under these circumstances, be made payable out of the common fund, or else all, who are permitted to come in and avail themselves of the benefit of his labor, be required to contribute proportionately to such expense, as a condition of receiving such benefit. It would be inequitable for one alone to bear the burden, and others to come in and reap the fruits. The fruits of the litigation inuring equally to the benefit of the whole class concerned, they are equally taxable with the costs and expenses. The services of the counsel employed constitute a necessary part of such expenses. The attorneys for the original complainant are also the attorneys for all who unite with him in the suit, or who afterwards are permitted by the courts to come in, and participate in the fruits into which the proceeding may ripen.—Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Central Railroad & Banking Co. v. Pettus, 113 Wall. 116, 5 S. Ct. 387, 28 L.Ed. 915; Grimball v. Cruse, 70 Ala. 534. Unless this relation exists, the court will not be justified in making counsel fees a burden on the trust fund, merely because the services rendered by such counsel incidentally inure to the benefit of all the creditors who succeed in establishing their claims.—Lehman v. Tallassee Mfg. Co., 64 Ala. 567."

No case is cited, nor has our search revealed one, in which the factual situation is the same as that in the case at bar, "and out of the facts the law arises." Counsel for appellants insist that the case of Bean v. Bean, 74 N.H. 404, 68 A. 409, 124 Am. St.Rep. 978, is factually identical with the instant case, except that there were two trustees in the Bean case and only one here. On the other hand, appellees contend that the case of Grimball v. Cruse, 70 Ala. 534, is conclusive against the claim of appellants. Neither view is correct.

In the Bean case, supra, the result of the suit added to the estate or trust fund certain property which the executrices claimed to own individually. That is, they claimed to own it as a gift independently of, and not by virtue of the trust. Here, Maude Dickinson claimed to own all of the trust estate, but she claimed it because of the trust instrument—the will. Her claim was derivative with respect to the trust—by virtue of the trust.

The case of Grimball v. Cruse, supra, is also factually distinguishable from the case at bar. Dr. Moore died testate. His will created a trust estate for the benefit of his two sons and two daughters. Cruse was trustee of the trust estate. One of the daughters, Mrs. Grimball, died intestate. Under the provisions of Dr. Moore's will, the common source of title to the property in controversy, several shades of claim were asserted to the property of Mrs. Grimball. Cruse, as trustee, filed a bill to obtain a judicial construction of Dr. Moore's will, and direction as to the proper administration and disposition of the trust property in his hands. His relation to the property was that of an indifferent stakeholder, solicitous, not that one party should succeed to the ownership, but that in settlement of the trust property and funds it should pass into the right hands. It is true that the interpretation of Dr. Moore's will also determined the several shades of claims among the claimants to Mrs. Grimball's estate. This Court properly held that the attorney's fees of some of these claimants in protecting their own individual interests were not proper charges on final settlement of Cruse, as trustee of the estate created by Dr. Moore's will.

But Maude Dickinson in the suit filed by her as trustee for a construction of Shelton C. Dickinson's will also joined as an individual, and as an individual claimed all of the trust property. Admittedly, she was entitled to one-half of it under the terms of

the will. This Court denied her claim to the other half and held, in effect, that it passed to the heirs at law under the statutes of descent and distribution as intestate property.—Kimbrough v. Dickinson, 247 Ala. 324, 24 So.2d 424. The manner and form by which she asserted her claim to the intestate property of the respondents is immaterial. In essence, Maude Dickinson, as an individual, filed suit to recover all of the property of the forty-nine respondents. That suit was successfully resisted by the sixteen respondents who defended. Undeniably, the entire interest of all the respondents in and to the property not disposed of by the will, the intestate property, was saved or preserved by the efforts of these sixteen respondents.

The rule is that a court of equity will, in its discretion, order an allowance of counsel fees or, as it is sometimes said, allow costs as between solicitor and client, to one who at his own expense maintained a successful suit or defense for the preservation, protection or increase of a common fund or common property, who has created at his own expense or brought into court a fund which others may share with him. The rule rests upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as himself, those who have shared in the benefits should contribute to the expense.—Grimball v. Cruse, supra; Bidwell v. Johnson, supra; Trustees v. Greenough, supra; Strong v. Taylor, 82 Ala. 213, 2 So. 760.

Section 180, Title 7, Code of 1940, provides:

"In all suits and proceedings in any of the courts of this state where the service of a guardian ad litem is required, the court having jurisdiction of such suit or proceeding must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the costs in such suit or proceeding, and which is to be paid, when collected as other costs in the proceeding, to such guardian ad litem."

The decree appealed from ordered the register to hold a reference to determine a reasonable fee to be paid attorneys representing the minors and those respondents serving in the Armed Forces of the United States at the time this suit was filed, the same to be taxed as costs against the entire estate of Shelton C. Dickinson, deceased, but that no attorney's fee be allowed to the attorney ad litem where such attorney served as guardian ad litem for the same person. In this, the trial court was not in error, and that part of the decree is affirmed.

As we have indicated above, all of the respondents and Maude Dickinson should share in the expense of the litigation. But the attorneys' fees should be based on and charged as costs to that part of the estate of Shelton C. Dickinson which the heirs at law take under the statute of descent and distribution, and which was preserved by the efforts of the appellants and their counsel.

Affirmed in part, and in part reversed and remanded.

BROWN, SIMPSON, and STAKELY, JJ., concur.